UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Thomas M. Moulton

    v.

David Bane and
Prime Choice Enterprises, LLC         Civil No. 14-cv-265-JD
                                         Opinion No. 2015 DNH 204

    v.

Thomas M. Moulton, et al.


O R D E R

Thomas M. Moulton brought suit against David Bane and his company, Prime Choice Enterprises, LLC ("PCE"), after their business relationship failed. In response, Bane and PCE brought counterclaims against Moulton and third-party claims against Eric Emery, King's Highway Realty Trust, Ltd. Partnership, and North Madison Hill LLC. Eric Emery moves for summary judgment on the third-party claims brought against him. Bane and PCE concede that they cannot prove the conversion claim against Emery, Count IV, but object to summary judgment on the tortious interference and unjust enrichment claims.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

## Background

Emery worked as the executive director of real estate and development for a New Hampshire company, The Meat House ("TMH"). TMH experienced financial distress in 2014 and began to close stores. When Emery's paychecks bounced, he began to look for other work.

David Bane was a franchisee of TMH and opened a TMH store in Summit, New Jersey, in 2012. During the winter of 2014, Bane was trying to purchase TMH's assets and to start a new company to operate TMH stores. Through discussions with Bane, Emery understood that he would have a position with Bane's new

company. Bane established Prime Choice Enterprises, LLC ("PCE") in March of 2014. On April 15, 2014, PCE acquired TMH's assets in a private, secured party Article 9 sale that was conducted by Centrix Bank. Emery worked for PCE without an employment agreement.

Thomas Moulton was a secured creditor of TMH who had the right to "step in" to manage TMH after TMH's default. Moulton exercised the step in rights on March 6, 2014, and operated TMH through another entity owned by Moulton, North Madison Hill, LLC ("NMH"), along with his associate, Michael Rubin. In that position, Moulton and Rubin facilitated PCE's purchase of TMH's assets and worked with PCE.

Emery knew that Moulton and Bane were working together but did not know the details of their arrangement. Emery developed a good working relationship with Moulton and Rubin. On behalf of PCE, Moulton paid Emery's salary and expenses during March, April, and May of 2014.

Emery was working to get leases for PCE to operate the TMH stores in Scarborough, Maine, and Stratham, New Hampshire. He was aware that the principal owners of the landlords for both stores, Steve Lopilato at Jenty, LLC, in Scarborough and Mark Stebbins at King's Highway Realty in Stratham, were friends of Moulton's. Emery also knew that Moulton was involved in the

lease negotiations on behalf of PCE.  PCE had signed a lease for the Scarborough store but not for the Stratham store when the relationship between Moulton and Bane broke down.

After PCE purchased TMH assets, PCE learned that Team Funding Solutions asserted ownership of the equipment at the TMH Stratham, New Hampshire, store.  PCE negotiated with Ted Reynolds, president of Team Funding Solutions, to settle the claims to the equipment.  When Moulton and Bane were no longer working together, Moulton's company, NMH, bought the leased equipment at the Stratham store from Team Funding Solutions.

During May, Emery became concerned because PCE did not have an employer identification number, which was necessary to pay its employees and to obtain permits to reopen TMH stores.  Bane told Emery he did not have the number because the website was not operating, but Emery accessed the website himself and found that it was working.  Emery also became concerned about how Bane was dealing with Moulton.

After the relationship between Bane and Moulton concluded, Moulton asked Emery to work for Moulton's company, NMH.  NMH was operating retail butcher shops at the TMH locations in Scarborough, Maine, and Stratham, New Hampshire.  Emery decided to accept Moulton's offer.  Emery sent Bane a formal letter of

resignation on May 22, 2014. Thereafter, Emery worked for Moulton's company, NMH.

## Discussion

PCE brought third-party claims against Emery for tortious interference, conversion, and unjust enrichment. In response to Emery's motion for summary judgment, PCE consents to summary judgment on the conversion claim but objects as to the tortious interference and unjust enrichment claims.[1]

A. Tortious Interference

PCE alleges that Emery tortiously interfered with PCE's lease with Jenty, LLC., the landlord of the Scarborough TMH store; with PCE's efforts to finalize a lease with King's Highway Realty, the landlord of the Stratham TMH store; and with PCE's efforts to settle its rights to TMH equipment with Team

---

[1] The court notes that Emery filed the motion for summary judgment on August 31, 2015, in which he set forth the grounds and record evidence supporting summary judgment in his favor on the conversion claim. Despite having the benefit of the record evidence provided for summary judgment, Bane and PCE filed their answer, counterclaims, and third-party claims on September 21, 2015, three weeks later, in which they again alleged the conversion claim against Emery. Then, on October 12, 2015, Bane and PCE conceded that they could not prove the conversion claim.
 In his reply, Emery asks that he be awarded attorneys' fees incurred in moving for summary judgment on the conversion claim. That request, however, is not properly raised in a reply. See LR 7.1(e)(1); LR 7.1(a)(1).

Funding Solutions.  Emery moves for summary judgment on the grounds that PCE lacks evidence that he interfered with any of the cited relationships or that any interference was improper.

   1.  Scarborough Store

   Emery, on behalf of PCE, negotiated a lease of the Scarborough store with Lopilato at Jenty, LLC.  Moulton was also involved in the negotiations because Lopilato was a friend.  After the relationship between Bane and Moulton ended, Moulton contacted his friend, Lopilato; Lopilato caused the lease with PCE to be voided; and Moulton's company, NMH, leased the store.  PCE contends that Emery tortiously interfered with its lease of the Scarborough store.

    "To establish liability for tortious interference with contractual relations, a plaintiff must show that:  (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." City of Keene v. Cleaveland, --- N.H. ---, 118 A.3d 253, 259 (N.H. 2015) (internal quotation marks omitted).  To be actionable, the interference must be improper, meaning motivated by an improper purpose.  Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv.,

Inc., 145 N.H. 158, 162 (2000); accord City of Keene, 118 A.3d at 259 ("Whether the alleged conduct is improper requires an inquiry into the mental and moral character of the defendant's conduct.") (internal quotation marks omitted). To be wrongful, interference must "surpass[] the permissible bounds of rough-and-tumble business competition." Cook & Company Ins. Servs., Inc. v. Volunteer Firemen's Ins. Servs., Inc., 2015 WL 5458279, at *2 (D. Mass. Sept. 17, 2015).

In support of summary judgment, Emery states in his declaration that he did not interfere with the lease that PCE signed with Jenty for the Scarborough store. He also testified at his deposition that he was not involved in Moulton's discussions with Lopilato about the lease. He also asserts that PCE lacks any evidence that he did interfere with the lease.

In response, PCE submits no evidence that Emery interfered with the lease but argues instead that inferences from the chronology of events could support a conclusion that Emery interfered with the lease. Specifically, PCE points to Emery's involvement in the lease negotiations and the timing of Emery's move to work for Moulton that was close to the time when NMH leased the Scarborough store. PCE contends that the chronology supports a reasonable inference that Emery was the key to the

7

lease of the Scarborough store and then caused Lopilato to void the lease with PCE and to sign a lease with NMH.

Without evidentiary support, PCE's theory is mere speculation. In light of Emery's declaration, denying that he interfered with PCE's lease, and the other record evidence, no reasonable inference can be drawn that Emery did interfere. Therefore, Emery is entitled to summary judgment on that part of Count I that is based on the Scarborough lease.

2. Stratham Store and Team Funding Sale

PCE did not have a signed lease for the Stratham store but was negotiating with Stebbins of King's Highway Realty for that purpose. When Moulton informed his friend, Stebbins, that he was no longer involved with PCE, Stebbins signed a lease with NMH, Moulton's company. Bane was in contact with Reynolds at Team Funding about acquiring the TMH assets that Team Funding claimed when NMH bought the assets. In both cases, PCE asserts a prospective contractual relationship that was lost because of Emery's alleged interference.

A claim for tortious interference with a prospective contractual relationship requires proof that the defendant "induced or otherwise purposely caused a third person not to enter into or continue a business relation with another and

thereby caused harm to the other." Sarah's Hat Boxes, L.L.C. v. Patch Me Up, L.L.C., 2013 WL 1563557, at *13 (D.N.H. Apr. 12, 2013) (internal quotation marks omitted).  That interference also must be improper.  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 229 F. Supp. 2d 70, 74 (D.N.H. 2002).  "[C]ertain types of conduct such as fraud or threats of physical violence ordinarily will be sufficient to support a claim for interference with prospective contractual relationship, but the use of ordinary means of persuasion or the exertion of limited economic pressure will not, by itself, be sufficient."  Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 307 (D.N.H. 2012).

PCE provides no evidence that Emery interfered with PCE's efforts to lease the Stratham store or to acquire the Team Funding assets.  Emery states in his declaration that he did not interfere with either transaction.  Other record evidence also supports Emery's lack of involvement.  In the absence of evidence of interference, PCE has not shown even a factual dispute to save those claims.  Therefore, Emery is entitled to summary judgment on the remainder of Count I and on Count II.

B.  <u>Unjust Enrichment</u>

PCE alleged that Emery "received benefits which would be unconscionable and contrary to law" for him to retain.  Emery

moves for summary judgment on the ground that there is no evidence that he received any benefit from PCE that would be unconscionable to retain. In response, PCE asserts that Emery benefitted from interference with the leases and with the acquisition of assets from Team Funding so that NMH instead of PCE acquired the leases and assets.[2]

"A plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." Gen. Insulation Co. v. Eckman Constr., 159 N.H. 601, 611 (2010) (internal quotation marks omitted). To recover on the claim, however, the plaintiff must show both that the defendant received a benefit and that it would be unconscionable for the defendant to retain the benefit received. GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, 6 F. Supp. 3d 195, 201 (D.N.H. 2014).

Here, PCE has not shown any benefit that Emery received or any benefit unconscionably retained. To the extent PCE relies on its tortious interference claim, it lacks evidence to support

---

[2] In a footnote in the objection, PCE states: "When employed by PCE, Mr. Emery was paid by Mr. Moulton on PCE's behalf. Therefore, to the extent Mr. Moulton's damages include payments made to Mr. Emery on PCE's behalf, they represent benefits wrongfully retained by Mr. Emery."

that theory.  Further, the benefit that is described by PCE appears to have gone to NMH, not Emery.[3]  Emery received payments from Moulton for his work at PCE.  PCE does not explain why it would be unconscionable for Emery to retain those payments.

Therefore, Emery is entitled to summary judgment on the unjust enrichment claim.

C.  Injunctive Relief

The motion for summary judgment does not address PCE's request for injunctive relief, Count IX.  Emery does contest the request for injunctive relief in his reply.  But see LR 7.1(e)(1).

Count IX seeks an injunction requiring Emery, along with Moulton and NMH, to return to PCE the TMH assets located at the Stratham store.  The claim is based on the tortious interference claim against Emery.  Because Emery is entitled to summary judgment on the tortious interference claim, no basis exists to support the claim for injunctive relief against him.  Therefore, Emery is entitled to summary judgment on Count IX.

---

[3] The argument presented in a footnote about payments made by Moulton to Emery and then claimed by Moulton in this suit is not sufficiently developed to permit review.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) (explaining that "district court is free to disregard arguments that are not adequately developed"); accord Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

<u>Conclusion</u>

For the foregoing reasons, Eric Emery's motion for summary judgment (document no. 58) is granted.

Therefore, all claims against Eric Emery are resolved in his favor.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph DiClerico, Jr.
United States District Judge

November 3, 2015

cc:  Jesse C. Ehnert, Esq.
     Anna B. Hantz, Esq.
     Michele E. Kenney, Esq.
     Deborah Ann Notinger, Esq.
     William B. Pribis, Esq.
     Ross H. Schmierer, Esq.
     Nathan P. Warecki, Esq.