```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

Thomas M. Moulton

    v.                          Civil No. 14-cv-265-JD
                                    Opinion No. 2015 DNH 215
David Bane, et al


O R D E R

Thomas M. Moulton brought suit against David Bane and his company, Prime Choice Enterprises, LLC ("PCE"), after their business relationship failed.  In response, Bane and PCE brought counterclaims against Moulton and third-party claims against Eric Emery, King's Highway Realty Trust, Ltd. Partnership, and North Madison Hill LLC.  Moulton moves for an award of expenses incurred in successfully moving to compel Bane and PCE to produce documents in response to his requests for production.

Standard of Review

When a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The court will not require payment if the "(i) the movant filed the motion before attempting in good

faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id.  The party facing sanctions under Rule 37 bears the burden of showing that they should not be imposed.  See R & R Sails, Inc. v. Ins. Co. of Penn., 673 F.3d 1240, 1246 (9th Cir. 2012); Novak v. Wolfposs & Abramson LLP, 536 F.3d 175, 178 (2d Cir. 2008); Walker v. Segway Inc., 2013 WL 3754864, at *1 (D.N.H. July 15, 2013).

Background

The claims in this case arise from the financial collapse of The Meat House, and the parties' interests in The Meat House assets.  Moulton brought suit against Bane and PCE, alleging that Bane made fraudulent misrepresentations concerning investment opportunities in PCE to induce him to assist PCE in acquiring The Meat House assets and breached their agreement.[1]  Bane and PCE brought counterclaims against Moulton for tortious interference with their economic relationships and for conversion.  On August 3, 2015, Moulton moved to compel Bane and PCE to produce documents in response to (1) Requests 20-22 in Moulton's first set of requests for production to Bane and PCE

---

[1] The complaint has been amended and now alleges additional claims.

and (2) each of the requests in the second sets of requests for production that Moulton propounded on Bane and PCE.[2]

### A. Requests 20-22

Moulton propounded his first set of requests to Bane and PCE on October 30, 2014.[3] Requests 20-22 in that set seek documents concerning PCE's and Bane's efforts to "solicit investments in PCE," "obtain financing for PCE," and "seek investors in PCE." After initially objecting to Requests 20-22, Bane and PCE agreed in March of 2015 to produce responsive documents pertaining to a limited time frame. As explained more fully in the court's order on the motion to compel, however, see document no. 68, Bane and PCE failed to produce the documents over the next five months, as their counsel negotiated with Moulton over multiple proposed protective orders that they asserted were a condition of producing documents in response to Requests 20-22.

By the time Moulton filed his motion to compel on August 3, which was over nine months after Moulton propounded the

---

[2] Although the motion to compel was filed by both Moulton and Emery, only Moulton propounded the disputed discovery. Because of this, the court determined that Emery had not shown that he could move to compel responses. See Order, document no. 68, at 1. Only Moulton moves for expenses here.

[3] The first set of requests attached as an exhibit to the motion to compel are only propounded to PCE. However, in his motion to compel, Moulton states that he propounded a first set of requests to Bane and PCE. Bane and PCE did not dispute that the first set of requests was made to both of them.

requests, Bane and PCE had not produced responsive documents. In its objection, filed seventeen days after Moulton moved to compel, Bane and PCE argued that the motion was moot with respect to Requests 20-22 because "[a]s of the date of this filing, PCE and Bane have identified and produced responsive documents."[4] Based on this representation, the court determined that Bane and PCE had failed to produce all responsive documents and therefore ordered them to produce all of the documents that Moulton requested in his motion to compel.

    B.  <u>Second Sets of Requests for Production</u>

Moulton propounded a second set of requests for production of documents to PCE on June 3, 2015, which requested documents concerning PCE's equipment and inventory and its financial records. On July 12, 2015, Moulton also propounded a second set of requests to Bane, which requested identical documents, but concerning "PCPA, LLC, Prime Choice Brands, LLC, and /or any other entity related to the retail butcher business in which [Bane] or PCE have an ownership interest." Bane and PCE responded on July 15, objecting to both sets of requests as, among other things, overbroad, irrelevant, and unduly

---

[4] Moulton filed a reply, in which he acknowledged that Bane and PCE had made a small production on August 10, but disputed that the motion was moot because the production did not contain documents concerning PCE's dealings with investors.

burdensome. In a July 23 phone conversation with Moulton's counsel, Bane and PCE confirmed that they would not produce documents in response to the second sets.

In its order on the motion to compel, the court held that the financial information sought in the second sets of requests was relevant to Bane's and PCE's tortious interference counterclaims for lost profits, which were premised on Bane and PCE losing the opportunity to operate retail butcher stores in New Hampshire and Maine. The court also held that the equipment and inventory documents were relevant to Bane's and PCE's conversion counterclaims for consequential damages. The court, however, limited the second set of requests propounded to Bane as only seeking documents concerning The Meat House-New Jersey LLC and Prime Choice Enterprises Retail, LLC, which operated retail butcher stores in New Jersey and Virginia, respectively. This limitation was based on Bane's and PCE's representation that those two entities were the only ones they owned that operated retail butcher stores and Moulton's clarification in his motion to compel that he was not seeking documents from entities not operating retail butcher businesses.

## Discussion

Moulton moves for an award of attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A), in the amount of $2,905.

5

Bane and PCE object, arguing that the court should not issue an award because they were substantially justified in refusing to produce documents in response to Moulton's second set of requests and that other circumstances make an award of expenses unjust.

A.   Substantially Justified

Substantial justification exists if the party's "position 'has a reasonable basis in law and fact' ... or, stated another way, [if] 'a reasonable person could think it correct.'" Dantran, Inc. v. U.S. Dept. of Labor, 246 F.3d 36, 40-41 (1st Cir. 2001) (quoting Pierce v. Underwood, 487 U.S. 552, 566 n. 2 (1988)); see also Josendis v. Wall to Wall Residence Repairs, Inc., 662 F .3d 1292, 1314 (11th Cir. 2011).  The burden is on the party facing sanctions to prove that its violation was substantially justified.  Davis v. Jacob S. Ciborowski Family Tr., 2012 WL 5904816, at *1 (D.N.H. Nov. 26, 2012).

Bane and PCE argue that their refusal to produce the requested financial records was substantially justified for two reasons.  First, they argue that a reasonable person could have concluded that the financial records that Moulton requested were not relevant.  Second, they argue that a reasonable person could have concluded that Moulton's request was overbroad because it pertained to several categories of documents for six entities,

6

some of which were not engaged in operating retail butcher shops.

### a. Relevance of Financial Records

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [which] need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is well-recognized that the scope of discovery under this standard is broad. Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 52 (1st Cir. 2009) ("The scope of discovery is broad, and 'to be discoverable, information need only appear to be reasonably calculated to lead to the discovery of admissible evidence.'"); see also 8 Charles Alan Wright & Arthur Miller, Fed. Practice & Procedure § 2008, 3 (3d ed. 2004) ("Most courts which have addressed the issue find that . . . relevancy under Rule 26 is extremely broad.").

In support of their contention that a reasonable person could conclude that the financial statements were not relevant, Bane and PCE rely on the rule requiring that lost profits be proved with reasonable certainty and beyond speculation. See Miami Subs Corp. v. Murray Family Trust, 142 N.H. 501, 517 (1997). Based on this rule, Bane and PCE argue that it was reasonable for them to withhold the financial records for the

7

entities operating stores in Virginia and New Jersey because such information would only be speculative as to any lost profits in Maine and New Hampshire stores.

As Bane and PCE acknowledge, the reasonable certainty rule is an evidentiary burden. That burden requires that a party seeking to recover lost profits prove the lost profits were reasonably certain based on the total evidence that it has adduced. George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 134 (2011) ("We will uphold an award of damages for lost profits if sufficient data existed indicating that profits were reasonably certain to result."). The rule provides no basis to argue that information is outside the scope of discovery merely because that information — in isolation — might not demonstrate lost profits in a reasonably certain manner. The request for financial information was relevant to Bane's and PCE's counterclaim for lost profits and, as such, only needed to be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); Arlequin, 583 F.3d at 52. Moulton's request did not have to meet the more stringent standard for proving lost profits on the merits, and it was not reasonable for Bane and PCE to insist otherwise.[5]

---

[5] Bane and PCE cited additional cases in their objection to Moulton's motion for expenses, all of which concern different applications of the reasonable certainty standard. None of those cases addressed the discoverability of financial

b. Overbreadth

Bane and PCE argue that they were substantially justified in refusing to produce documents in response to Moulton's second set of requests because a reasonable person could have concluded that the requests, which sought several categories of documents from six entities, were overbroad and unduly burdensome. Federal Rule of Civil Procedure 34 requires that "[a]n objection to part of a request [for production] must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

As discussed in the court's order on the motion to compel, Moulton's second sets of requests sought documents that were generally relevant to the claims and defenses in this action. If Bane and PCE believed that the requests covered documents that were too burdensome to produce, they were required to produce documents in response to the parts of the request that were not unduly burdensome and to specifically object to the parts of the requests that were. It was not reasonable for Bane and PCE to simply refuse to produce any documents because they believed that portions of Moulton's requests were overbroad. See Fed. R. Civ. P. 34(b)(2)(c); see also Wultz v. Bank of China

---

information in establishing lost profits. Moreover, to the extent those cases address new doctrines, they should have been raised in the motion compel, not here. See MPD Accessories, B.V. v. Urban Outfitters, Inc., 2013 WL 3816598, at *3 (S.D.N.Y. July 22, 2013) (holding that new arguments and contentions cannot be used to avoid award under Rule 37(a)(5)(B)).

9

Ltd., 910 F. Supp. 2d 548, 560 (S.D.N.Y. 2012) (although requests were overbroad, responding party "was obligated under the Federal Rules to permit inspection of [relevant] documents.").

B.   Whether an Award Would Be Unjust

Alternatively, Bane and PCE argue that an award of expenses to Moulton would be unjust. Bane and PCE offer three "other circumstances," which they contend would make an award unjust under the circumstances. First, they argue that an award of expenses would be unjust because their counsel cooperated with Moulton to negotiate the scope of discovery and protective orders. Second, Bane and PCE argue that an award of expenses would be unjust because Moulton has failed to identify any prejudice. Third, Bane and PCE argue that an award would be unjust because the court concluded in its order on the motion to compel that the financial information of the entities in New Jersey and Virginia "could be probative."

As discussed above, Bane and PCE improperly offered a blanket objection to the second set of requests, and the court is unaware of any efforts that it made to negotiate the scope of those requests. As for Requests 20-22, during those negotiations, PCE informed Moulton's counsel multiple times that it would produce responsive documents. Yet PCE waited over nine

10

months after Requests 20-22 were propounded and until Moulton had already moved to compel to begin that production. That is precisely the type of dilatory production that Rule 37 addresses. See Fed. R. Civ. P. 37(a)(5)(A) (providing award "if the disclosure of the requested discovery is provided after the motion was filed"). Therefore, any cooperation in negotiating production logistics is undermined by Bane's and PCE's failure to produce documents, which necessitated the motion to compel.

Bane and PCE also contend that an award would be unjust because Moulton has not identified any specific prejudice that it suffered. As discussed above, Bane and PCE, not Moulton, bear the burden under Rule 37. Moulton need not make any showing to be entitled to reasonable expenses under Rule 37. In any event, there is ample evidence that Moulton did suffer prejudice in the form of the fees and costs associated with moving to compel discovery that he should have already had. S.E.C. v. Yorkville Advisors, LLC, 2015 WL 855796, at *9 (S.D.N.Y. Feb. 27, 2015) (finding prejudice where party "incurred both the harm of costs and attorneys' fees in litigating their motion to compel"). For these reasons, Bane's and PCE's prejudice arguments are unpersuasive.

Bane and PCE also argue that the court's conclusion that the financial records of the New Jersey and Virginia entities "could be probative" is an acknowledgment that reasonable minds

11

can disagree over the relevance of that information.  But whether information is discoverable under Rule 26 does not turn on whether it is probative.  "While trial evidence is relevant only if it is probative of a consequential fact, see Fed. R. Evid. 401, evidence is relevant for discovery purposes even if it only 'appears reasonably calculated to lead to the discovery' of evidence which would be admissible at trial." N.L.R.B v. New England Newspapers, Inc., 856 F.2d 409, 414 n.4 (1st Cir. 1988) (quoting Fed. R. Civ. P. 26(b)(1)).  Therefore, the court's conclusion that the requested information "could be probative" is not tantamount to concluding that the information "could be relevant."

For these reasons, Bane and PCE have failed to demonstrate that an award under Rule 37 would be unjust.  Accordingly, an award under Rule 37 is warranted.

C.   Reasonable Expenses

Attorneys' fees are included as part of reasonable expenses under Rule 37(a)(5)(A).  As in other fee shifting contexts, an award of reasonable attorneys' fees under Rule 37 is typically calculated by the lodestar method in which the court multiplies the hours productively spent by a reasonable hourly rate.  See Centennial Archaeology, Inc. v. AECOM, Inc., 688 F.3d 673, 679-80 (10th Cir. 2012); Walker v. Segway Inc., 2013 WL 3754864, at

*2 (D.N.H. July 15, 2013). "The obligation to support both the time and rate components rests with the party seeking the award . . . ." Spooner v. EEN, Inc., 644 F.3d 62, 68 (1st Cir. 2011).

Moulton seeks $2,905 for attorneys' fees for time expended by attorney Michele E. Kenney and paralegal Kristina L. Knight for preparing and filing the motion to compel, the reply, and the motion for expenses. In support, Moulton filed an affidavit from Kenney that includes the pertinent billing records for Kenney and Knight. These records show that Kenney spent 6.5 hours working on the motion to compel, 1.0 hour on the reply, and 3.0 hours on the motion for attorneys' fees and the supporting declaration, and that Knight spent .5 hours preparing and filing the motion to compel. In her affidavit, Kenney states that she is a partner in the Litigation Practice Group of Pierce Atwood LLP, that she specializes in commercial litigation, and that her billing rate for this case is $270 per hour. Kenney also states in her affidavit that Knight's billing rate is $140 per hour. Bane and PCE do not object to the hours or rates that Kenney and Knight billed.

After review of Moulton's submission, and noting that Bane and PCE do not object, the court finds that Kenney's rate of $270 per hour is reasonable. The rate that private counsel charges for her services "while not conclusive, is a reliable

indicium of market value." United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 40 (1st Cir. 2008). Furthermore, Kenney's rate comports with comparable rates in this jurisdiction. See Forcier v. Creditors Specialty Serv., Inc., 2014 WL 6473043, at *14 (D.N.H. Nov. 17, 2014) (finding $295 per hour reasonable for partner work in civil litigation); N.H. Bar Ass'n, The 2014 Economics of Law Practice, Part 2 4 (survey of New Hampshire attorneys engaged in a commercial trial practice charge a median rate of $298 per hour). The court also finds that the $140 per hour rate for Knight is reasonable.

In addition, the court finds that the time spent by Kenney and Knight on the motion to compel, the reply, and the motion for expenses was productive, with one exception.[6] The billing records show one entry for .5 hours in which Kenney "draft[ed] and fil[ed]" the reply and the leave to reply. Because the filing of legal documents is clerical work, the court will adjust .3 of the hours in this entry to a reduced rate of $100 per hour. See McMillan v. Mass. Soc. For Prevention of Cruelty to Animals, 140 F.3d 288, 308 (1st Cir. 1998) ("[C]lerical or

---

[6] Drafting a request for attorneys' fees is considered part of "making the motion" to compel and is therefore recoverable under Rule 37. See, e.g., Chesemore v. Alliance Holdings, Inc., 2015 WL 5093283, at *5 (W.D. Wis. 2015); Schroeder v. H & R Block Eastern Enterprises, Inc., 2013 WL 1249052 (M.D. Tenn. 2013); Sure Safe Indus. Inc. v. C & R Pier Mfg., 152 F.R.D. 625, 627 (S.D. Cal. 1993).

secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.").

D.  Calculation of Fees

The fees to be awarded are calculated as follows:

| | | |
|---|---|---|
| Michele E. Kenney | 10.2 hours at $270 per hour | $2,754.00 |
| | .3 hours at $100 per hour | $30.00 |
| Kristina L. Knight | .5 hours at $140 per hour | $70.00 |
| TOTAL | | $2,854.00 |

Conclusion

For the foregoing reasons, the plaintiff's motion for expenses (document no. 79) is granted.  Plaintiff is awarded $2,854 in fees.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

November 24, 2015
cc:  Jesse C. Ehnert, Esq.
     Anna B. Hantz, Esq.
     Michele E. Kenney, Esq.
     Deborah Ann Notinger, Esq.
     William B. Pribis, Esq.
     Ross H. Schmierer, Esq.
     Nathan P. Warecki, Esq.